Call the council for case number two. Mr. Beardsley. Yes. Very good. Thank you. Mr. Morris. Yes, I'm here. Thank you. We do not have video yet. Can you turn your camera on? How's that? I still do not have video. I see him, Ms. Rudolph. Very good. If the other judges can see Mr. Morris, I think we're ready to go. Mr. Anderson. Yes, I'm here. Can you see Mr. Anderson, judge? I do not have video on my end. Not yet. I see R.A. There we go. Very good. Thank you. All council are present. All right, and please call the next case for argument. 19-3232 from the District of South Dakota Supreme Court. Mr. Beardsley, we'll hear from you first. Thank you. May it please the court, council, thank you for giving us the opportunity to present an oral argument. This is an extremely important case because it's a tragedy. What happened here was that Oakley Engesser spent 12 years in prison for a crime he did not commit in which the South Dakota Supreme Court indicated in his latest habeas that there's no reasonable juror that could find him guilty. The reason he spent those 12 years in jail was because of a reckless investigation performed by the defendants. I want to start with this. There were three different standards that Judge Viken, in our opinion, did incorrectly. The first one is important because it was established in 1986 by this court that the due process right against a reckless investigation was clearly established in 1986 and 1989, and on page 19 of Judge Viken's opinion, he did not state that. He said that there wasn't any case before 2000. Well, the case was after 2000, but specifically indicates that it was a clearly established in 1986, and the case, and we made the mistake, your honors, and we want to admit it, that we did not point it out in our reply brief, and we should have. But if you'll look at Winslow v. Smith, specifically it states, pursuant to Wilson, then a due process right against a reckless investigation investigation was clearly established in 1986. As a result, plaintiff's right to be free from a reckless investigation was clearly established three years later in 1989. Additionally, White v. Smith, our Eighth Circuit again stated on page 759, in Wilson, we concluded that plaintiff's claim of reckless investigation that took place in 1986 could proceed. Thus demonstrated, the right was clearly established at that time. Accordingly, the right to be free from a reckless investigation was clearly established during the 1989 investigation in this case. Our case was in 2000. Obviously, it was clearly established, and Judge Viken got that wrong in page 19 of his opinion. The second, I am... Counsel, before you move on to your second point, I just want to ask a basic question about what's still in the case, which is, my understanding is that the false arrest claim fell away earlier in the litigation, and then really what we're talking about now, which is why we're talking about due process and not the or am I incorrect about what's still in the case and what's being appealed? No, you're correct, Your Honor, and we're talking about a reckless investigation, not the other. You're absolutely correct, Your Honor. Thank you. Okay, thank you. Absolutely. The second standard that Judge Viken got incorrectly was the totality of the circumstances. If you look at the magistrate opinion and compare it to Judge Viken's, the magistrate took the totality of the circumstances into consideration, and Judge Viken did not. He looked at this as a piecemeal in isolation and did not put the pieces of the puzzle together. There are numerous pieces you have to put together to fulfill the totality of the circumstances, which is exactly what was said by our Eighth Circuit Court of Appeals in Norris v. Ingalls, the Seventh Circuit by Holloway, and in fact, our Supreme Court, excuse me, another Eighth Circuit, and this was important because it was an en banc ruling by the Eighth Circuit, and that's Moran v. Clark, and they said, you have to look at all of the facts and put them together. So there's no question, but Judge Viken didn't do that. The third standard that Judge Viken missed involved the use of a juror. Now, we know it's a legal decision that needs to be made, but our cases have established that you must look at a reasonable juror or a juror, White v. McKinley, and the Amron decision. So those three standards were missed by Judge Viken, and as a result, there should be a reversal because he did not use the correct standards in three different areas, and you don't even need it in three areas, but you need it in one of them, and there's no question that he used the wrong standard in each one. Now, this is a simple case, and I know it seems complicated because he spent 12 years in prison. It's a simple case because it was a car accident case involving a Corvette going down the road, and there were three witnesses, three eyewitnesses that told him it was a woman driving. Two of them were on the road. The first one, Sean Boyle, was at the Full Throttle Saloon, which is in Sturgis, about 20 minutes from when this happened. Sean Boyle reported that to an attorney, Dennis Finch, who then reported it to the state's attorney, who asked Mr. Fox to go check him out, find out what he has to say, because he's testified now that a woman was driving. Well, he did nothing. We asked for all his notes, all his memos, all his telephone calls, did absolutely nothing, and went and proceeded to tell on the police reports, grand jury, trial, and subsequent deposition, that nobody said a woman was driving. Counsel, if I could, I'd just like to kind of cut to the chase here. Taken in a light, most favorable to your client, there's plenty of evidence of negligence here. There's even plenty of evidence of gross negligence, but is there any evidence of purposefulness? Any evidence that Officer Fox purposefully ignored evidence favorable to your client? Absolutely, and the reason we know that is that, and you'll notice in the magistrate's opinion, that she talks about the animus. In fact, after six witnesses now have come forward and said they saw a woman driving, these people, the defendants, still claim that Oakley Engesser was driving. Six witnesses. Three of them are eyewitnesses that he already knew, and they were very specific about she, her, and a woman. It isn't negligence to do that. He then did not provide that information to counsel, to Engesser, and they can go, well, we provided a list of names. A list of names is not exculpatory evidence. What we have here is exculpatory evidence that a woman was driving. There's only one question, and that's what even Officer Karras said about Fox. If he didn't ask the question, it's reckless. So even Officer Karras says if Fox didn't ask the question, who was driving, it's reckless. You only have one question. I use this example of a first grader. A first grader would know to ask who was driving. He knew who was driving because they used she, her, and woman every time they described it, and they've all testified to that, and one of them was standing out on the interstate watching the Corvette go by, saw the whole thing, and saw a woman driving, and he told him that, and they've testified to that. They go, well, it wasn't on a statement. That's because he was never asked. It wasn't an issue. He made it an issue after Becky Feist went in the vehicle, tampered with the evidence, took out a purse in spite of this lot, and took out a purse and then claimed $100,000 reward if they can pin it on Oakley Engesser. Then she started calling Mr. Fox, and Mr. Fox then changed from three reports that he had a woman driving to now he's changed to a man driving. In addition, your honor, at the grand jury, he even said Oakley told him that he was driving. Absolute fabrication. So we've got a fabrication regarding the witnesses because he told at the grand jury in a trial and in deposition, nobody told me it was a woman. Nobody told me it was a woman. They couldn't see it. That's not true according to all of the people. Ekhom, Charlotte Delaney Fowler, and the first gentleman. I forgot his name now. Anyway, now there's six. So there's no question this isn't just negligence. This isn't even gross negligence. This is an absolute intent to indict somebody, and here's the reason, your honor. Oh, she's dead. You can only charge a live person, and for three reports signed off by Mr. Karas as well, he puts, well, I'm sorry, but it was a woman driving. Then miraculously, he changed to a man. Not one more witness came forward. Not one more piece of evidence. All he did was, I think I'll change it to Oakley Engesser driving, and now he's got 12 years in prison for something he didn't do. If you put all the things together, you can't. You got three witnesses to begin with they lied about. Then you have, well, we're just going to throw the evidence out into the parking lot and let rain, hail, sleet, wind, you name it, destroy the evidence. Then he allows Becky Feist, who has an interest of $100,000 she collected, by the way, because he would indict, have this man indicted. So he changes to a fourth story that has no support from anybody. In fact, I asked Mr. Karas, well, did you ask him? Why did you change? He said, I don't think so. I said, well, it'd be reckless, wouldn't it, to not ask? And he said, absolutely, it would be reckless. Interestingly, Judge Swanson, who was the prosecutor at the time, now he's a judge. I took his deposition, and I said to Judge, wouldn't it concern you if somebody is inside some evidence? And in the evidence, then they go forward, and they tamper with the evidence, and then you use it anyway, and you couple that with $100,000. So we have three witnesses. We have destroyed evidence. We have tampered with evidence. We have a multitude of improprieties, but the worst, probably, is the lying about the witnesses. And he continued to lie throughout all the proceedings that there was no one was saying it was a woman or a man. That's an absolute lie that sent this man to jail. And there's no question that that's improper, because our cases say there's a duty to disclose exculpatory evidence. And names don't do it, but facts do. And the facts were he, she, and woman. There was never a question it was a woman driving. But miraculously, without anything else, Fox turns it and becomes a man. You know what Karrasch did? Nothing. Wasn't there some question about the location, though, of the various people? Like Finley, I think, was on the passenger side, and Gesser came out. It looked like the door was open. It was on the driver's side. I mean, I understand you're saying there's no evidence, but there is evidence that he was driving. It just happens to be circumstantial evidence. No, it's, Judge, thank you, but there isn't any evidence. Here's the deal. Even the magistrate pointed out, so he interprets opening the door. By the time Fox got there, Finley's already on the ground. She's already out of the vehicle. The EMTs didn't magically pull her out of the trunk. They opened the door. Greg Schmink opened the door. Then they had the door open. They pulled her out, put her on the ground. The magistrate even pointed that out and said that there's no question that anybody would figure out, well, how would they get her out of the vehicle? And Gesser was gone to the hospital. Judges, I only have three minutes left. I'd like to reserve that. Thank you very much. You may. Thank you for your argument. Mr. Morris, we'll hear from you first, I believe, for Appley Fox. Thank you, Your Honor. My name is Bob Morris. I represent Trooper Ed Fox in the Court and Counsel. Trooper Fox asked this court to affirm the district court's dismissal of all of Mr. and Gesser's claims. Due to the amount of time for argument, Mr. Anderson and I are splitting. I will focus on the allegation of reckless investigation. The reckless investigation allegation is based upon the substantive due process claim. The threshold question for this could be said to shock the contemporary conscience. To establish a violation of substantive due process based on a failure to investigate, Mr. and Gesser must show that Trooper Fox intentionally or recklessly failed to investigate, thereby shocking the conscience. Counsel, in that regard, and we've got limited time, so I'm going to go ahead and ask this. So if we take the facts of the light most favorable to end Gesser, was Officer Fox informed by witnesses Elkholm and Fowler that a female was driving the car? No. Mr. Fox testified at the scene. Mr. Elkholm was there and Ms. Delaney Fowler was there. Mr. Fox gave, asked them, did you see anything? Mr. Elkholm gave a statement. It's at Trooper Fox appendix 119. He says nothing about who's driving. Ms. Delaney Fowler told him, I didn't see anything. My head was down. He didn't take a statement from her. It was only about five or six, five years or so after this accident that Fowler and Delaney now are saying that they used the he or she. In fact, it was Fowler who said her testimony ultimately was I saw them, her driving in Sturgis. That was two hours before the accident. On Mr. Elkholm's he comes up with this idea that he saw a woman driving. The car went, he saw the man fly out of the top of the car. The top of the car never disengaged. But what's also really, really, really important here is that those names were given to the defense attorney who defended Mr. at the trial. Those names were provided to him. During the habeas, he was asked, did you have the names of these witnesses? Yes. Did you interview them? Did you send an investigator? No. He never talked to them. He never called them at trial. He didn't do anything. Counsel, aren't we really looking to what Officer Fox knew at the time rather than the effectiveness of counsel? Well, and our position is Officer Fox knew this. He had a statement from Mr. Elkholm that says nothing. And he doesn't have a statement from Ms. Fowler because she said, I didn't see anything. We talk about the issues concerning ignoring evidence. Mr. Beardsley wants to concentrate on the court. One thing before you go into ignoring the evidence, can you address this business about whether Fox wrote a report that identified the driver as a woman and then changed it? And then you can come back if you want to hear. Thank you, your honor. I think there are three or there are four different documentations. The spin on it that those reports really are that spin. First of all, there's a rough draft of notes concerning the scene, concerning what's going on. Then there's another report that he's got to give within 30 days. And he listed Ms. Finley as the driver because she was the registered owner of the vehicle. And that investigation hadn't been completed yet. As the investigation went on and he started looking at all the evidence, Ms. Finley was found in the passenger side. She had severe injuries to the right side of her body. The door was open. Mr. Engesser was laying six to 10 feet from the open door. And Mr. Beardsley wants to talk about Mr. Smink who came forward six years, seven years later. But the first person on the scene was Mary Redfield. She was a nurse. She attended, she gave aid to Mr. Engesser while he's lying in the median. And she looked over and she testified to the grand jury, the driver door was open. How do you know it was the driver door? I could see the steering wheel. So Ms. Redfield was first person on the scene saw the door open. And going through the process, Fox, he did his investigation. So he did not purposely ignore evidence. He's going through the process. He's making investigative decisions. And Mr. Engesser wants to ignore that his position doesn't account for the physical evidence that would have suggested Mr. Engesser's driving. I want to follow up a little bit on Judge Brown's earlier question. My understanding of the record, and you can correct me if I'm wrong, is that later these two witnesses said that they used the word or the pronoun she. She was driving at the scene with Officer Fox. Now, it sounds to me like he didn't follow up on that. He didn't deal with it. Why isn't that purposefully ignoring expulsory evidence? Well, the officer who's investigating the case has to investigate it and look at the physical evidence and the additional evidence that may be present. And our position is they never told him that. We have evidence to the contrary, right? We have to look at it like most favorable to the plaintiff. Judge Viken did look at it like most favorable to the plaintiff and explained why this alleged exculpatory evidence still didn't get to the point of being a situation where it said that Mr. Fowler did contact him during the appeal. And Mr. Fowler, I'm sorry, Mr. Echol told trial counsel, you know, I think I may have seen the vehicle or who was driving the vehicle. And he said, well, what did you see? And he explained that he saw the red Corvette, the person who was driving had blondish hair. Trial counsel said that was not exculpatory evidence because the blonde hair that he described would implicate my client, would not implicate Ms. Finley as being the driver. So if Mr. Fox is going through this investigative process, he's looking at it and he is looking at the totality of the circumstances and the ultimate decision by a grand jury was that he should be indicted and he was found guilty. Thank you. Say, Mr. Morris, you say Ms. Delaney Fowler said at the time that she was looking down and didn't see the accident, right? Correct. And she's now saying apparently that she saw a woman driving? No, the, I think, well, I was going to ask, does she deny saying the statement to the trooper at the time that she was looking down? What is the precise record on that? I believe the precise record is that that she did not make a statement or give a written statement at that time. I believe when she was subsequently making reference to seeing a woman driving, she's talking about two hours earlier in Sturgis. Now the Sturgis, I think it's undisputed that the car left Sturgis at 6 p.m. The accident happened at 8 p.m. And even if Ms. Finley is driving at 6 and the accident happens at 8 hours, two hours later at 8 p.m., they could have changed drivers. Okay. Thank you for that answer. Mr. Anderson, we'll hear from you. Thank you, your honor. If it pleases the court and counsel, my name is Rob Anderson. I'm here to ask this court to affirm the district court's dismissal of all claims against him, which were asserted in the underlying action. The district court did that and we believe it was proper and should be affirmed. First, the circuit court, the district court did find that this circuit did not recognize a claim for substantive due process violation arising from an alleged reckless investigation in the year 2000 and that was not contested at the time by Mr. Engesser. Even if such a right was established, and we agree with the district court that it was not, Mr. Karras' involvement here was limited to supervision. He was not directly involved in the investigation other than actually being out at the scene at the time shortly after the accident happened, controlling traffic. This happened, you probably read during the Sturgis bike rally, and there was a huge crowd out there. There were a number of law enforcement people. Sergeant Karras directed Fox, his subordinate, to contact and talk to witnesses as his part of the investigation, and that's what was done. Mr. Karras did not do that. He was not directly involved. There can be no respondent superior liability imposed on Sergeant Karras because of this. The standard to judge police conduct in regard to this claim, as has already been pointed out, is conduct which shocks the conscience. It's not negligence. It isn't gross negligence. It's not reckless or wanton behavior. It's not even deliberate indifference. Counsel, I'd like to ask you a question about that. We know from Winslow v. Smith that purposefully ignoring exculpatory evidence shocks the conscience. Do you think there's a distinction with recklessly disregarding such evidence? Is there a legal distinction between purposefully ignoring and recklessly ignoring for purposes of shocking the conscience? I think so, and there's certainly a distinction between negligently ignoring it, and I think there is a distinction between purposefully and recklessly. In this case, there was discussion between Mr. Fox and witnesses. There was, as Mr. Morris pointed out, consideration of a multitude of other factors. The investigation was ongoing. Very few witnesses said they saw anything, and some of them who did now say they saw something different. The physical facts of the accident were such that it, I think, led a reasonable officer to believe that Mr. Angesser was, in fact, the driver of the car, but I think there is a difference. As Mr. Beardsley agreed and as clearly noted by the circuit previously, this is a question of law for the court, whether there's a substantive due process violation and not for the jury. And what do you base that on? That seems to be an interesting question, whether the judge makes that determination based upon their own idea of what shocks the conscience or whether they look to a contemporary community or a jury? I think they look to the contemporary community standard, but it's their decision, and I want to point out very quickly, we cited a should have been the Sacramento County v. Lewis case, which led to the ultimate decision by this circuit in Terrell v. Larson, which again affirmed that it was a decision for a judge, not for a jury. There is no record evidence that supports any type of active, any type of due process violation, substantive or procedural on the part of, in our estimation, on the part of Mr. Fox or Sergeant Karras. I want to talk briefly about the failure to train and supervise claim because that's a claim made against my client. I think it has to be analyzed in light of this circuit's decision in Livers v. Schenck and other cases. Mr. Trooper Fox had been trained in the Air Force as an investigator, had been trained by the South Dakota Highway Patrol at the Law Enforcement Academy. Sergeant Karras knew that. He saw nothing and knew nothing to indicate training was insufficient, and we don't believe it was. He saw nothing and knew nothing to indicate that Mr. Fox needed additional training, and we don't believe he did. There just isn't any evidence that would support a failure to train claim against Sergeant Karras. There's also no evidence to satisfy the very stringent burden of a failure to supervise claim. Failure to supervise claim requires showing that there was a pattern of unconstitutional acts by a subordinate, which must be persistent and widespread, deliberate indifference or authorization of those acts by the supervisor, i.e. Mr. Karras, and failure to take remedial action. There is not a shred of evidence in this record in regard to any of those claims. Nothing would satisfy the criteria for a failure to train or failure to supervise claim. I want to talk briefly about the physical evidence as well in terms of the storage of the car. A Brady violation, in order to be actionable, exists when there's a reasonable probability that this evidence in question, if it had been available, would have produced a different result. There is no indication in this record that that's true. The only testimony about what the car could have or did show or did not show was from an expert retained by the prosecution who said the blood spatter or blood evidence here wouldn't tell you anything because of the nature of the accident. He did find a hair follicle, which he couldn't test because, or hair, there was no follicle there to test it. He said the blood spatter evidence would not give you any indication who was driving and who was not. They knew that Ms. Finley had left a considerable amount of blood in the car, but of course that was on the passenger side. That's where her head was resting. In short, none of the standards and none of the cases from this circuit or others which have dealt with failure to train and supervise would find liability on Sergeant Karras in these circumstances. In fact, very, very many in which qualified immunity has been granted to the defendants. Very many of those cases show a much stronger argument for liability on the part of supervising in this case where there is in fact none we would submit. So I would respectfully ask this court to affirm the district court's dismissal of the claims against Sergeant Karras. Very well, thank you for your argument, Mr. Anderson. Thank you. Mr. Beardsley, we'll hear from you in rebuttal. Thank you. I'll be quick because I only have three minutes. First of all, there's no question Fox lied. He lied about who was driving and what he was told, and he was told repeatedly by three different witnesses. It achens. There's no question. If an investigator purposely ignores evidence suggesting defendant's innocence, then it's a violation of due process, substantive due process, and it shocks the conscience. In addition, the courts very aptly point out, isn't that a dispute of fact, and don't we need to take all of the facts and the light on the plaintiff's side? Absolutely. And the funny thing here is we have absolute sworn testimony from all the proceedings that took place, all the habeas corpus, and these witnesses repeatedly said they told him it was her, she, and a woman, and then he goes to the grand jury and lies. He lies in his police report. He lies at the trial, and he lies even later in the deposition. So there's no question, at the very least, there are questions of fact given those witnesses that said I told him, and then he lied. In addition, because it's sworn testimony, it should be greater weight for these witnesses. There's no question that we can talk about all the other facts. The fact that it wasn't stored properly, the fact that pieces of evidence were tampered with, which is preposterous, and what the magistrate did was put them all together. And we like this court because it's a de novo review. This is on your own. You can reverse this and let us go to trial, or you can send it back and have Judge Viking. It's up to you. But there was no question that the facts were purposely ignored by this officer. But it isn't even necessary, because in the county of Sacramento versus Lewis, which Rob Anderson brought up, they even talk about you can have deliberate indifference. Now, in that case, it was a prison. It was an automatic deal. And pursuits is an automatic deal. It wasn't automatic here. This was planned and determined over a period of half a year and digested all this and decided, I'm going to ignore all of the eyewitnesses. The person standing on the interstate watching a woman driving, this isn't about what color hair she had. They said woman, she, and her. As a result of what they did, this man spent 12 years in prison for something he didn't do. And it isn't negligence. It is purposely ignoring evidence. And as a matter of fact, given the fact you have to look at the evidence in the light most favorable to the plaintiff, it's important to know that these eyewitnesses have never wavered from the time they were called in five different habeas corpus deals. All the witnesses have stayed in there and said, I told him. As a result, thank you very much. Please reverse this. Thank you. All right. Thank you all three counsel for your arguments. The case is submitted.